AYERS v. AMATUCCI et al.

No. 34473.    March 25, 1952.

Rehearing Denied April 23, 1952.

*243 P. 2d 716.*

Hughey Baker and Robert N. Wilde, Tulsa, for plaintiff in error.

Hudson, Hudson & Wheaton and A. M. Covington, Tulsa, for defendants in error.

PER CURIAM. This cause was formerly before the court as No. 33596, decided May 31, 1949, between the same parties and under the same style, reported 201 Okla. 598, 207 P. 2d 788.

Plaintiff bought a used Buick automobile from defendants, who were used car dealers, on December 8, 1945, for $1,584 cash. The fire and injury involved in this case occurred on January 13, 1946, 36 days after the plaintiff's purchase of the automobile, which in the interim and while under the ownership and control of the plaintiff, was driven, according to the speedometer, 1,940 miles. On Sunday, January 13, 1946, plaintiff, with another young man, Ralph Howard, and two girls, left Tulsa about 8:30 in the morning, drove to Grand Lake, "and all over that part of the country up there," and on their return journey at about 4 o'clock that afternoon, stopped in the town of Grove for a coke. Their attention was called by a bystander to something leaking from the rear end of the car. Plaintiff was in the car and Ralph Howard had gotten out. They drove the car to a nearby filling station, where Ralph told the attendant that they had something leaking from the rear of the car and wanted him to check it. Ralph motioned plaintiff to

drive the car onto the grease rack lift in a narrow brick building on the station premises and plaintiff did so. The girls got out and stood by the door of the filling station. Ralph was aready out of the car and went down the street, "to get something and try and fix it." The car was raised on the grease rack lift and plaintiff got underneath for his inspection and found that there was gasoline leaking from the front of the gasoline tank at the rear of the car. He went three or four feet under the car, "to where it was coming out," and thought:

"well that was a drainage plug and I will put it back up and I got hold of it and it crumbled in my hand and the two girls were standing outside there and I said, 'This is nothing but a cork bottle stopper.' That is what it looked like, a cork. It was black and spongey. It crumbled in my hand and it leaked down on my arm here and I decided I had better get out from under there and I turned around and started back out the door and about the time I turned around, I might have taken about one step and it ignited from the back part of the garage, out like this, out towards the door. Towards me and I just didn't make it out in time and it caught me on fire."

Plaintiff had shut off his motor and did not know what had caused the gasoline to ignite. He did not know that there was a gas heater with an open fire in the enclosure. The day was chilly and it had been raining. When plaintiff first took hold of the plug or cork, the gasoline was dropping and not running a stream, but came out more when he took hold of the plug and started running down his arm. When the gasoline ignited, plaintiff was badly burned. His friend, Ralph Howard, who apparently had returned, helped others put out the fire on the plaintiff. The building was demolished.

Ralph, who had gone to get something to fix the leak, had returned with a cork and some Scotch tape with which to stop the leak, a selection for which the plaintiff had no explanation

and which apparently was made before plaintiff discovered it was a cork which was in the drainage vent or hole in the tank.

Plaintiff "had never known there was a cork in there and (I) never put a cork in there the whole time (I) had the car." At the time of trial, plaintiff's friend Ralph was in California. Plaintiff married one of the girls. There had been a previous trial in connection with which Ralph made some statement, but his testimony is not in the record and plaintiff is his own only witness to the essential facts. His only witness other than himself is his physician who attended him and testified to his injuries. His only other evidence to the essential facts consisted of two photographs, one of the burned automobile and one of the hole in the burned gasoline tank, neither of which we find very enlightening.

Plaintiff sued for damages for his personal injuries on two theories—that of negligence on the part of the defendant in delivering the car to him in a dangerous condition and that of breach of warranty of fitness in that the car was represented to be in safe condition.

At the opening of the trial, the court suggested a question as to whether the plaintiff should be required to elect whether to stand upon the warranty or upon negligence, to which plaintiff's counsel replied:

"Mr. Baker: I would like to stand on the defendants' negligence.

"Mr. Baker: Also at this time, as I understand it, the Court has advised me in my opening statement I am not to mention the warranties which we have plead and which we allege the defendants made.

"The Court: That is right.

"Mr. Baker: To which the plaintiff excepts."

The trial was conducted as that of an action for negligence, with plaintiff permitted to make his offers of proof

of warranties and save exception to their exclusion, and so submitted to the jury, which returned a verdict for defendant, upon which judgment was rendered and is here on appeal.

In our view of the case, the controlling question is whether the plaintiff has sustained his burden of proof of any primary breach of obligation by the defendants, whether arising ex delicto out of negligence or ex contractu out of warranty. Such breach, if any, must rest upon inference that the automobile was delivered by the defendants to the plaintiff in an unsafe condition, in that a hole in the gasoline tank, which may have been the drainage vent, was plugged with a cork instead of a metal cap or some form of covering perhaps more secure. That basic inference must rest upon the assumption that the automobile was in the same condition in that respect at the time of the fire as it was at the time of its delivery to the plaintiff, 36 days and 1,940 miles earlier, during all of which interim it would appear that the car was entirely under plaintiff's control. We cannot indulge that assumption. The plaintiff testifies only that he did not put the cork there and had never known it was there. There is no evidence concerning any use of the car by others or the lack of it, while the car was under plaintiff's control. It would appear that the only person who had a cork in mind as a stopper for gasoline tank drainage was the plaintiff's friend, Ralph Howard, as that is what he went and got on no more specific information than that something was dripping from the rear of the car in the region of the gasoline tank. Under the meager facts and under the circumstances in evidence in this record, and without resort to consideration of any additional factors upon which liability would depend, the evidence fails to establish primary breach of duty on the part of the defendants.

The doctrine of res ipsa loquitur cannot be invoked until plaintiff has established, as preliminary propositions, what thing caused the injury and that the thing causing the injury was under the control of the defendants. Champlin Refining Co. v. George, 182 Okla. 118, 76 P. 2d 895. It does not apply where the facts shown are equally consistent with the hypothesis that the injury sued for was caused by the negligence of either party or of both combined and the act complained of must be shown to have been such as is without explanation except on the theory of negligence in the light of ordinary experience and the thing causing the accident must have been under the control of the defendants at the time of the accident. Cosden v. Wright, 202 Okla. 211, 211 P. 2d 523; Terrell v. First Nat. Bank & Trust Co., 204 Okla. 24, 226 P. 2d 431; Soter v. Griesedieck Western Brewery Co., 200 Okla. 302, 193 P. 2d 575, 4 A.L.R. 2d 458; Canada Dry Ginger Ale, Inc., v. Fisher, 201 Okla. 81, 201 P. 2d 245; Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okla. 610, 216 P. 2d 579.

Much controversy between the parties at the trial and in the briefs has turned upon the question of warranties, which we do not regard as significant in this case for reasons above expressed, as the failure of proof or primary negligence necessarily also constitutes a failure of proof of breach of warranty. If no defective condition at the time of delivery of the automobile was proven, then it is immaterial whether or not the defendants warranted against such condition. There was a sale contract memorandum, signed by both parties, which would have tended to negative a warranty, except that reference was clearly inserted to an OPA warranty. There was a dealer's warranty, so included by reference, in the sale contract, which warranted the car to be in good operating condition and to remain in such condition under normal use or service for a period of 30 days after delivery or 1,000 miles, whichever might first occur, and agreed to make repairs or replacements necessary to place the car in good operating condition at reduced

cost under certain conditions. Chiefly, the plaintiff strongly contends that he should have been permitted to prove that the automobile was orally represented to him by the defendants to be in good, safe running condition, as a matter of the defendants' own knowledge, as it had been checked from bumper to bumper to establish such knowledge on the part of the defendants. Offer of proof to that effect was properly excluded by the court. If there had been evidence of a primary defective condition at the time of delivery, which caused the injury 36 days later, then the doctrine of the Kansas case of Nelson v. Heatley, 151 Kan. 512, 99 P. 2d 795, cited by plaintiff, to the effect that the dealer may bind himself by representations to have the knowledge of the condition of the automobile which he represents himself to have, might be regarded as applicable, but there is no such connection established between the injury and the alleged defect in this case.

Our view of the case, as above expressed, renders unnecessary further consideration of the contentions of the parties. The judgment of the trial court is, therefore, affirmed.

This court acknowledges the services of Attorneys A. G. C. Bierer, Jr., Merle G. Smith, and Hugh Adams, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.