**UNITED STATES of America, Plaintiff,**

v.

**100 CHADWICK DRIVE, KINGS MOUNTAIN, NORTH CAROLINA (Deed Book 1105, Page 0998, Cleveland County, North Carolina), Defendant.**

No. 4:92–CV251–P.

United States District Court,
W.D. North Carolina,
Shelby Division.

Nov. 20, 1995.

**433**

Frank D. Whitney, Asst. U.S. Atty., U.S. Attorney's Office, Charlotte, NC, for United States.

Allen A. Bailey, Bailey Patterson Caddell & Bailey, P.A., Charlotte, NC, Richard A. Culler, Bailey, Patterson, Caddell, Hart & Bailey, Charlotte, NC, for Ronald H. Wellman.

James F. Wyatt, III, John R. Cunningham, III, Charlotte, NC, Page Dolley Morgan, Gastonia, NC, Steve B. Dolley, Jr., Gastonia, NC, for Linda Yarbro Wellman.

Page Dolley Morgan, Gastonia, NC, Steve B. Dolley, Jr., Gastonia, NC, for Ray H. Smith.

### MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the motion of the United States ("Government") for summary judgment (document # 34), and the cross-motion of Claimant Ronald H. Wellman ("Wellman") for summary judgment (document # 44). For the reasons stated herein, the Government's motion will be granted, and Wellman's motion will be denied.

### I. BACKGROUND

On December 8, 1992, a federal grand jury found that there was probable cause to indict Ronald H. Wellman for multiple counts of cocaine trafficking, money laundering, and conspiracy, and returned a bill of indictment. The bill of indictment charged that on specified occasions Wellman had purchased large quantities of illegal drugs for the purpose of distribution. On December 31, 1992, the United States filed a verified complaint for forfeiture *in rem* including a sworn affidavit of Special Agent Daniel B. Caylor, III ("Caylor"). The complaint alleged that Wellman had used the property at 100 Chadwick Drive, Kings Mountain, North Carolina, to facilitate cocaine trafficking.[1]

More specifically, the forfeiture complaint alleged that Wellman used the property to facilitate at least one felonious multi-kilogram cocaine transaction. That transaction had its origins in late 1989, when Larry Busler ("Busler"), a cooperating informant, began purchasing kilogram quantities of cocaine from Wellman and Olin Thompson ("Thompson"), one of Wellman's confederates. After one such purchase, Thompson told Busler that Wellman needed to buy back four ounces of cocaine. Thompson picked up Busler, paid him for the cocaine, and they drove to the house at 100 Chadwick Drive. When they arrived at the house, Busler placed the cocaine in a newspaper box adjacent to the Chadwick Drive property. Based upon this evidence, the Magistrate found probable cause to believe that the property at 100 Chadwick Drive was subject to forfeiture and issued a warrant for the seizure of the property.

---

1. The Government also alleged that the property was the proceeds of drug trafficking, but it has not pursued those arguments.

Initially, Busler had told Caylor that he had dropped the cocaine in the mailbox at 100 Chadwick Drive. Subsequently it became clear that there was no mailbox at the property. For this reason, Busler visited the site in the company of federal agents and brought them to what he called a "mailbox" but what was actually a newspaper box. No one disputes that this newspaper box is there, and Busler's testimony that he put the cocaine in that box has not been contradicted. Subsequently, Agent Caylor submitted an addendum to his affidavit addressing this matter and providing further evidence in support of the Government's motion for summary judgment.

In connection with its efforts to clarify the "mailbox" versus "newspaper box" dispute, the Government learned that Busler had dropped cocaine in the newspaper box at 100 Chadwick Drive on at least two other occasions between September and December of 1989. One drop occurred in October of 1989 after Busler had purchased one kilogram of cocaine for $27,000. A few days after that transaction Thompson called Busler and asked if he could buy back 4 to 6 ounces of cocaine. When Busler said he would sell the cocaine for $1,000 an ounce, Thompson asked Busler if he remembered how to get back to "that" house. Busler said he did not, so Thompson met him at a nearby restaurant. Thompson then drove Busler back to the property at 100 Chadwick Drive where he placed 4 ounces of cocaine in the newspaper box. As they made this drop, Busler noticed that the front door of the house at 100 Chadwick Drive was open, and Wellman was standing in the doorway. Busler asked Thompson if Wellman lived in the house. Thompson admitted that Wellman lived at 100 Chadwick Drive, but said that Busler was not supposed to know that.

■ Later in December of 1989, Busler bought two kilograms of cocaine from Thompson and Wellman. Approximately one week later Thompson called Busler and said that he needed 10 ounces of cocaine. When Busler said that he would sell the cocaine, Thompson asked if Busler could find the house again. Busler told Thompson he could find the house, and Busler delivered the 10 ounces of cocaine by putting it in a brown paper bag and placing the bag in the newspaper box adjacent to the house at 100 Chadwick Drive. About 10 days later, Thompson met with Busler and paid him $10,000 in cash.[2]

## II. ANALYSIS

The Government and Wellman have filed cross motions for summary judgment. In his motion, Wellman claims that the Government has failed to produce evidence that there was a substantial connection between the property at 100 Chadwick Drive and any illegal activity. In part, Wellman relies on the confusion cited earlier concerning whether Busler left drugs in a "mailbox" or a "newspaper box." He also claims that the newspaper box at issue is not actually located on the property at 100 Chadwick Drive, so there is no evidence that the property is connected to his drug trafficking. Wellman also claims that a forfeiture in this case would violate the constitutional prohibition of double jeopardy and excessive fines. For its part, the Government contests each of Wellman's assertions and claims that it is entitled to forfeiture as a matter of law.

### A. *Probable Cause and Substantial Connection.*

■ Both parties seek summary judgment pursuant to Fed.R.Civ.Proc. 56. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex, Corp. v. Ca-*

2. The Court notes that Wellman and his wife did not obtain an interest in the property until November 15, 1990 (as tenants in common) and November 22, 1991 (as tenants by the entirety), whereas the illegal activity at issue occurred in 1989. (See document #20). In fact, the evidence of record shows that Thompson was the record title holder at the time the illegal activity described above took place. *See Id.* Nonetheless, Wellman is an owner of an interest in the property and therefore has standing to contest the forfeiture of his interest. *See U.S. v. 92 Buena Vista Ave., Rumson, N.J.,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).

*trett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) *citing* Fed.R.Civ.Proc. 56(c). However, Rule 56 does not require the moving party to produce evidence negating an opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. That is, "under *Celotex,* 'the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'" *Cray Communications v. Novatel Cmptr. Systems, Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (*citing* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2720 at 10). This is because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

■ "Once a defendant makes a properly supported motion for summary judgment, the burden shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial." *Sylvia Development Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and this burden is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Put another way, there must be a *genuine* issue for trial. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ..." *Id.* Where, as here, a party moves for summary judgment based on lack of proof as to material facts, "the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512.

■ As with any summary judgment motion, "the court must draw any permissible inference from the underlying facts established in the record in the light most favorable to the non-moving party." *Austin v. Clark Equipment Co.,* 48 F.3d 833, 835 (1995). But in order for an inference to be *permissible* it must be *reasonable,* and "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in 'light of the competing inferences' to the contrary." *Sylvia,* 48 F.3d at 818, *citing Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). As the Fourth Circuit has stated:

> [I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*Sylvia,* 48 F.3d at 818 *citing Ford Motor Co. v. McDavid,* 259 F.2d 261, 266 (1958) (brackets in original). In short, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In a civil forfeiture action *in rem* brought pursuant to 21 U.S.C. § 881 or 18 U.S.C. § 981, the United States has the burden to "show probable cause that a substantial connection exists between the property forfeited and the criminal activity defined by the statute." *U.S. v. $95,945.18 United States Currency,* 913 F.2d 1106, 1110 (4th Cir.1990).[3] The probable cause determination "requires the court to make a practical

---

**3.** The Fourth Circuit employs the same analysis for forfeiture action brought under these statutory sections. *See U.S. v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989).

common-sense decision whether, given all the circumstances set forth ... there is a fair probability that the properties to be forfeited" have a substantial connection to the specified criminal activity. *U.S. v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)) (quotations omitted). Like the probable cause inquiry, the "substantial connection" requirement must be applied with common sense, *U.S. v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989), and the Court is required to determine whether the property has more than an "incidental or fortuitous" connection with criminal activity. *U.S. v. Schifferli,* 895 F.2d 987, 990 (4th Cir.1990). If unrebutted, the showing of probable cause is sufficient to support a forfeiture. *United States v. B & M Used Cars,* 860 F.2d 121, 125 (4th Cir.1988); *Thomas,* 913 F.2d at 1114.

■ Upon a finding of probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that he or she owned the defendant property and the property was neither used nor intended to be used unlawfully. *Thomas,* 913 F.2d at 1114. A claimant can also avoid forfeiture of their interest by proving, by a preponderance of the evidence, that he or she neither consented to nor had knowledge of the illegal use and took reasonable steps necessary to prevent the property's illegal use. *See* 21 U.S.C. § 881(a)(7); 18 U.S.C. § 981(a)(2). Recognizing that the substantive law and standard of proof shapes the summary judgment inquiry, *see Anderson,* 477 U.S. at 247, 251–55, 106 S.Ct. at 2510, 2512–13, the Fourth Circuit has held that once the Government has made a showing of probable cause, the burden shifts to the claimant who cannot rest on mere allegations or denial but must come

forward with specific facts showing that there is not a substantial connection between property at issue and the criminal activity outlined in the Government's complaint. *See $95,945.18,* 913 F.2d at 1111 (quotations and citations omitted). And while the Court is obliged to draw reasonable inferences in favor of the nonmoving party, those inferences must be reasonable in light of competing inferences to the contrary. *Sylvia,* 48 F.3d at 818, *citing Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Wellman has not met his burden in rebuttal. Initially, Wellman argues that summary judgment is inappropriate because the Government asserted that drugs were dropped at the mailbox in front of the property when, in fact, there was no mailbox. The short answer to this argument is: So what? The issue has always been whether Busler dropped drugs in a box, by whatever name, in front of the property, not whether the box was a mailbox or a newspaper box. As the addendum to agent Caylor's affidavit makes clear, what Busler called a mailbox was actually a newspaper box. Wellman has not come forward with any evidence rebutting the evidence that the newspaper box exists or Busler's testimony about the drug drops, and therefore, this discrepancy in designation does not create a genuine dispute of material fact. Wellman's semantic quibbling defies the common sense that governs the probable cause inquiry, and cannot serve to meet his burden in rebuttal.[4]

Wellman also argues that summary judgment is inappropriate because there is evidence that the newspaper box is not actually located on the property at 100 Chadwick Drive, but instead, is over the property line.[5]

---

4. Wellman notes that when agents took Busler to the property to locate the box he described two more occasions when he dropped cocaine in the newspaper box outside the property. But Wellman has not argued that this difference in testimony creates a genuine issue of material fact which is wise because the amount of drugs traded does not determine whether the property is properly forfeited, *see Santoro,* 866 F.2d at 1542–43, and Wellman has not produced any evidence that these transactions did not occur. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

5. The details of Wellman's contention are not clear. He has offered the affidavit of a surveyor who has said that there is 13.90 feet between the property line and the edge of the asphalt road. Apparently, this is because the road only takes up a small portion of the right-of-way. Of course, that does not actually tell the Court how far the newspaper box is from the property line. Whatever the case, the Government has not contested Wellman's assertion and therefore the Court accepts Wellman's contention that the box is not on the property.

According to Wellman, the Government has not shown probable cause to believe that there is a substantial connection between the property and Wellman's drug trafficking, because the box where the drugs were dropped is not actually on the property at 100 Chadwick Drive.

 This Court disagrees. The Government has produced unrebutted evidence that Wellman was living in the house at 100 Chadwick Drive while he was peddling drugs. It has also produced evidence that on three occasions Busler was asked to return cocaine to Thompson or Wellman by dropping it in the newspaper box in front of the property. On one such occasion, Busler was asked whether he could find his way back to the property at 100 Chadwick Drive for the purpose of making that delivery. When he replied that he could not, Thompson picked him up and drove him to the property where they dropped off the cocaine. On that occasion, Busler saw Wellman standing in the front doorway of the house on the property, and Thompson told Busler that Wellman was living in the house, although no one was supposed to know this. Also, during these drug drops Busler noticed, while he was in the car with Thompson, that another car driven by Wellman or Thompson was parked by the house on the property.

Taken together, these facts certainly suffice to establish probable cause that the property at 100 Chadwick Drive was used to facilitate Wellman's drug trafficking. Indeed, the inference that Wellman was using the house to facilitate his drug dealing is simply unavoidable, especially in light of Wellman's failure to produce any evidence in support of a competing inference. Instead, Wellman has argued that the Government's evidence is insufficient to establish probable cause to believe that a substantial connection exists between the property and his drug trafficking. Implicitly, Wellman asks this Court to infer that although he lived in the house at 100 Chadwick Drive, and although drugs were dropped into a newspaper box adjacent to that property, he never took those drugs from the box into the house. Because the inference Wellman asks this Court to draw is patently unreasonable in light of competing inferences, and unsubstantiated by any evidence, Wellman's assertion must be rejected.

For the same reason, Wellman's reliance on *U.S. v. Two Tracts of Real Property*, 998 F.2d 204 (4th Cir.1993) is misplaced. According to Wellman, *Two Tracts* establishes that merely transporting contraband across a property does not create the substantial connection which justifies forfeiture. Since the box where drugs were dropped is not actually on the property, he argues, forfeiture is inappropriate.

This Court believes that Wellman's reliance on *Two Tracts* is misplaced because several critical elements of the court's reasoning in that case are not present here. In that case, the property sought by the Government had no connection with the crime other than furnishing an easement that was used to carry drugs from their point of unloading to a public thoroughfare. The Fourth Circuit emphasized that this easement was the only way for the drug smugglers to reach land from the point of offloading. *Two Tracts*, 998 F.2d at 212. Since it was practically impossible for the defendants to reach the street by any other means, the court reasoned, the link between the property and the drug activity was a mere fortuity. *Id.* For these same reasons, the court indicated, it could not be said that the drug smugglers had intended the property to be used to facilitate their criminal activity. *Id.* Given these factors, and because the drug defendants did not own an interest in the property at the time of the drug smuggling, the court concluded that there was no substantial connection between the property and the illegal activity. *Id.* at 212–13.

None of these factors are present in this case. For one thing, there is no evidence that Wellman's use of the property at 100 Chadwick Drive was a mere fortuity or that he did not intend the property to be used to facilitate his drug trafficking. Rather, the Government's evidence shows that Wellman deliberately directed Busler to drop cocaine at the newspaper box in front of the property on several occasions. Also, there is evidence that Wellman was living in the home clandestinely during his drug trafficking operation

which supports the inference that he owned or had a possessory interest in the property during that time. Further, the affidavit provided by Agent Caylor provides unrebutted testimony that Wellman purchased the home from Thompson, his co-conspirator and the individual who facilitated many of the drug purchases and buy-backs described by Busler.[6] Wellman has not produced any evidence that he did not use the property to facilitate his drug trafficking except to point out that the box where the cocaine was dropped is not actually on the property. For the reasons given above, that evidence is insufficient to rebut the Government's showing of probable cause to believe that there is a substantial connection between the property at 100 Chadwick Drive and Wellman's drug trafficking.

### B. *Double Jeopardy.*

 Wellman also argues that this forfeiture proceeding violates the prohibition of double jeopardy contained in the Fifth Amendment. Traditionally, civil penalties are regarded as punishments within the meaning of the Double Jeopardy Clause only where the civil penalty is so grossly disproportionate that it bears no relation to the actual loss attributable to illegal activity. *See e.g. U.S. v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *U.S. v. Tilley*, 18 F.3d 295 (5th Cir.1994). Wellman has not argued that this forfeiture violates the Double Jeopardy Clause under this traditional analysis. Instead, he relies on the Supreme Court's opinion in *Austin v. U.S.*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), where the Supreme Court held that civil *in rem* forfeitures are a "punishment" subject to the Excessive Fines Clause of the Eighth Amendment, *id.*, at ——, 113 S.Ct. at 2812, to argue that this forfeiture proceeding is necessarily a "punishment" within the meaning of the Fifth Amendment's Double Jeopardy Clause. Since he has already pled

guilty to the drug offenses that elicited this forfeiture, he argues, the forfeiture proceeding is a second punishment for the drug offenses that therefore violates the Double Jeopardy Clause.

 *Austin* does not dictate the conclusion urged by Wellman. In that case, the Supreme Court held that civil *in rem* forfeitures were punishment within the meaning of the Excessive Fines clause because the forfeitures were not *solely* remedial. *Id.*, at ——, 113 S.Ct. at 2812. And admittedly, the court in *Austin* cited its opinion in *U.S. v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989),—a case determining whether a civil sanction was punishment within the meaning of the Fifth Amendment's Double Jeopardy clause—for the proposition that "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose ... is punishment, as we have come to understand the term." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2812 citing *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis in original, brackets omitted).

In *Halper*, however, the court wrote:

> We hold therefore that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, *but only* as a deterrent or retribution.

*Id.*, 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added). And the Supreme Court has used the *Halper* test—after *Austin*—to determine whether a tax is a punishment within the meaning of the Double Jeopardy Clause. *Dept. of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). This Court believes *Austin* and *Halper* must be read together to mean that a civil sanction is punishment

---

**6.** As noted, it appears that Wellman did not receive, or at least record, legal title to the property at issue until November 1990. But this is clearly not dispositive given the unrebutted evidence that Wellman had a possessory interest in the home during the period in question. Further, insofar as the property was owned by Olin Thompson, Wellman's co-conspirator, during this period, the facts related herein clearly show that the property is subject to forfeiture. *See Two Tracts*, 998 F.2d at 204 ("This case would be quite different, for example, if [the legal owner of the property at the time of the illegal activity thereon] ... had known of and endorsed [the use of the property to facilitate criminal activity].").

within the meaning of the Fifth Amendment only where it is solely deterrent or retributive (*i.e.*, not partially remedial). Under this reading, the traditional analysis applied to the civil forfeiture statutes, which clearly have some remedial purpose, *see Santoro*, 866 F.2d at 1543–44; *U.S. v. Tilley*, 18 F.3d 295, 297–300 (5th Cir.1994), survives *Austin*, and a forfeiture is not punishment within the meaning of the Double Jeopardy Clause unless the civil forfeiture bears no relation to the actual loss occasioned by the illegal activity. *See e.g. Halper, supra; Thomas v. C.I.R.*, 62 F.3d 97, 100 (4th Cir.1995).

This narrower reading of *Austin* draws support from footnote 4 in the *Austin* opinion where the court noted that the Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings in cases where the forfeiture could be fairly characterized as remedial. *Austin*, 509 U.S. at —— n. 4, 113 S.Ct. at 2804 n. 4. Surely the court's reference to legitimate remedial forfeitures, without more, intimates the court's belief that its decisions in *Austin* or *Halper* did not mandate that all civil forfeitures must be characterized as punishment for the purpose of the Double Jeopardy Clause. Certainly, for example, the forfeiture of contraband such as illegal drugs or dangerous instrumentalities cannot be viewed as punishment, *U.S. v. Cullen*, 979 F.2d 992, 994 (4th Cir.1992) (instrumentality); *cf. U.S. v. Wild*, 47 F.3d 669, 674 n. 11 (4th Cir.1995) (forfeiture of property constituting or derived from proceeds of illegal activity is not punishment within meaning of Excessive Fines Clause); *see also U.S. v. Alexander*, 32 F.3d 1231, 1236 (8th Cir.1994); *S.E.C. v. Bilzerian*, 29 F.3d 689, 696 (D.C.Cir.1994).[7] Likewise it is highly unlikely that the court intended to undercut a whole body of caselaw recognizing that civil penalties, including forfeitures, have legiti-

mate remedial goals in this casual way. Yet if *Austin* is read as broadly as Wellman urges, then these results follow quite logically. Such an incongruous result indicates that *Austin* must be read narrowly.

This narrower reading of *Austin* also finds support in the notion that the Double Jeopardy protection is " 'intrinsically personal' and that only 'the character of the *actual sanctions* ' can substantiate a possible double jeopardy violation." *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946 (*citing, Halper*, 490 U.S. at 446, 109 S.Ct. at 1901) (emphasis added). For although the forfeiture statutes might make property worth far more than that necessary to effect remedial goals *subject to forfeiture, see Austin*, 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14, in cases where the forfeiture sought by the Government or the actual forfeiture allowed after operation of the innocent owner defense can be properly characterized as that to which it is entitled in terms of "rough justice," *see Halper*, 490 U.S. at 448, 109 S.Ct. at 1902, the actual sanction imposed by the forfeiture statute would still be properly regarded as remedial, and therefore the sanction would not violate the Double Jeopardy Clause.

■■■ And although the court in *Austin* indicated that it made sense to look at the forfeiture statute as a whole rather than its actual operation in a given case for the purposes of determining whether civil forfeiture is punishment, *see Austin*, 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14, it viewed the remedial/punitive distinction as immaterial because it believed that a remedial forfeiture would, by its nature, never be "excessive" within the meaning of the Excessive Fines Clause. In this way, the court implied that the focus on actual sanctions and the puni-

---

7. Maybe the court was differentiating between forfeitures of contraband or instrumentalities of illegal activity as opposed to property used to facilitate criminal activity in this newest footnote 4, *cf. United States v. Carolene Products Co.*, 304 U.S. 144, 151–54 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938); for therein the court cited two cases where it had found that the civil forfeitures at issue were properly characterized as remedial, *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. U.S.*, 409

U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), and both of these cases involved contraband. However, the language of the footnote is not so limited, and for the reasons given in the main body of the opinion, this Court will not read *Austin* broadly so that it undermines a substantial body of caselaw which holds that civil penalties, including forfeiture, can be fairly characterized as remedial and therefore valid in terms of the Double Jeopardy Clause absent certain extraordinary circumstances.

tive/remedial inquiry proper to the Double Jeopardy Clause were required by the very terms of the "Excessive" Fines Clause which by its nature entails a proportionality inquiry. Obviously, the focus of traditional Double Jeopardy Clause analysis on the actual sanction imposed by the civil penalty and its remedial or punitive nature remains critical to Double Jeopardy Clause analysis precisely because that clause protects against double punishments quite apart from whether the double punishments are properly characterized as excessive. But likewise, it is still necessary to distinguish between civil penalties that are remedial or punitive in nature for the purpose of determining whether a civil penalty violates the Double Jeopardy Clause. And precisely because the two clauses are intended to address two distinct abuses of governmental power it is not facetious to use different approaches to determine whether a civil penalty is a "punishment" within the meaning of the different clauses. Whatever the case, given the long line of cases recognizing that civil forfeiture provisions which are properly characterized as remedial in their operation do not violate the Double Jeopardy Clause, a body of caselaw noted by the court in *Austin* and recently applied by the court in *Kurth Ranch, supra*, this Court cannot accept Wellman's contention that the civil forfeiture at issue is, by its nature, necessarily a (second) "punishment" that violates the Double Jeopardy Clause. For these reasons, this Court does not agree with *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1219 (9th Cir.1994).

### C. *Eighth Amendment.*

 Wellman also argues that the forfeiture in this case violates the Excessive Fines Clause of the Eighth Amendment. In the context of a civil *in rem* forfeiture, the Fourth Circuit has adopted the substantial connection or instrumentality test to determine whether the forfeiture of property violated the Excessive Fines Clause of the Eighth Amendment. *See U.S. v. Chandler*, 36 F.3d 358, 365 (4th Cir.1994). There the court fashioned a three-part instrumentality test which requires a court asked to determine whether a forfeiture is an excessive fine to examine (1) the nexus between the offense

and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of that offending property that can readily be separated from the remainder. With respect to the first prong, the court stated that:

> In measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. No one factor is dispositive, but to sustain a forfeiture under the Eighth Amendment challenge, the court must be able to conclude, under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as intended.

*Id.*

 This case satisfies the test set forth in *Chandler*. As noted, on several occasions Larry Busler was told to deliver cocaine to the newspaper box adjacent to the property which, absent strong evidence to the contrary, yields the unavoidable conclusion that Wellman was using the house to facilitate his drug trafficking. This conclusion is further buttressed by evidence that Wellman was living in the home, but took steps to conceal this from drug purchasers or sellers. Further, there is evidence that Busler made his deliveries throughout the three-month period when he was purchasing drugs from Wellman between September to December of 1989. And for these reasons, there is no real doubt that Wellman intended to use the home as the delivery point for the drugs left off by Busler. Also, it is undisputed that Thompson and/or Wellman owned the home during the period in question and that Wellman was living in the home while drug traf-

ficking. And given that this was one parcel of real property, there is no sense in which the parcel can be severed along lines that reflect its guilt or innocence, the critical consideration in an *in rem* forfeiture.[8] For these reasons, this Court finds that the property at 100 Chadwick Drive is properly viewed as substantially connected to Wellman's drug trafficking such that it is properly subject to forfeiture as a matter of law.

**NOW, THEREFORE, IT IS ORDERED** that:

(1) the Government's Motion for Summary Judgment (document # 34) be, and hereby is, ***GRANTED only as to Claimant Ronald H. Wellman;*** and

(2) Ronald H. Wellman's Motion for Summary Judgment (document # 44) be, and hereby is, ***DENIED.***

---

8. This Court thinks it is clear that the severance referred to in *Chandler, supra,* is the physical severance of the property, not the conceptual severance of interest introduced by the innocent owner defense or sought by the Government in this case under North Carolina state law.