998 F.2d 204
 62 USLW 2003
 UNITED STATES of America, Plaintiff-Appellant,
v.
TWO TRACTS OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES
AND IMPROVEMENTS THERETO, LOCATED IN CARTERET COUNTY, NORTH
CAROLINA, and Being More Particularly Described as Follows:
A Parcel of Land Located in Carteret County, North Carolina,
Being Described as Lot 3 On The Map, Recorded in Plat Book
28, page 182, Carteret County Registry and a Parcel of Land
Located in Carteret County, North Carolina, Being Described
as Lot "ST" On the Same Map; Both Parcels Being Part of the
Property Deeded to Kenneth Wayne Willis in Deed Book 571,
page 499, Carteret County Registry; Subject to all Rights
and Obligations and any Easements Across Tract # 2 (Lot
"ST") as Shown in Book 652, page 179 and Book 652, page 180,
Carteret County Registry and any and all Proceeds from the
Sale of Said Property, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
TWO TRACTS OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES
AND IMPROVEMENTS THERETO, LOCATED IN CARTERET COUNTY, NORTH
CAROLINA, and Being More Particularly Described as Follows:
A Parcel of Land Located in Carteret County, North Carolina,
Being Described as Lot 3 On The Map, Recorded in Plat Book
28, page 182, Carteret County Registry and a Parcel of Land
Located in Carteret County, North Carolina, Being Described
as Lot "ST" On the Same Map; Both Parcels Being Part of the
Property Deeded to Kenneth Wayne Willis in Deed Book 571,
page 499, Carteret County Registry; Subject to all Rights
and Obligations and any Easements Across Tract # 2 (Lot
"ST") as Shown in Book 652, page 179 and Book 652, page 180,
Carteret County Registry and any and all Proceeds from the
Sale of Said Property, Defendant-Appellant.
 Nos. 92-1750, 92-1990.
 United States Court of Appeals, Fourth Circuit.
 Argued March 2, 1993.
 Decided June 7, 1993.
 
 G. Norman Acker, III, Asst. U.S. Atty., Raleigh, NC, argued, (Margaret Person Currin, U.S. Atty., Raleigh, NC, on brief), for plaintiff-appellant.
 Louise Wood Flanagan, Ward & Smith, P.A., Greenville, NC, argued, (Michael P. Flanagan, Ward & Smith, P.A., Greenville, NC, on brief), for defendant-appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and RESTANI, Judge of the United States Court of International Trade, Sitting by Designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Pursuant to a forfeiture provision in The Comprehensive Drug Abuse Prevention and Control Act of 1970, the United States may compel the relinquishment of all legal interests in real property that has been used to commit a felony violation of the federal narcotics laws. We must decide whether this provision, 21 U.S.C. § 881(a)(7), allows the Government to arrest real property whose only connection with crime consists of furnishing a quasi-easement[1] over which drug smugglers have hauled contraband. We hold that it does not.
 
 
 2
 * The proceedings below stemmed from a marijuana "off-load" operation that took place in Carteret County, North Carolina in 1986. Because the physical setting of the crime bears directly upon our holding, we describe that setting below. We then proceed to relate the history of the case.
 
 
 3
 * The hamlet of Marshallberg, North Carolina, lies in the remote eastern reaches of Carteret County, on the waters of Core Sound. Near the center of the village a small peninsula juts west into the Sound and curls north toward the mainland, forming a narrow cove known as Marshallberg Harbor. At the time the instant action arose this peninsula was divided into four adjoining tracts of land.[2] The largest tract, which consisted of almost three acres, abutted Main Street, the only road immediately accessible from the peninsula. This tract occupied the entire base of the peninsula, completely sealing off the other three parcels from access to Main Street. The parcel adjoining the three-acre tract on the west housed the M.W. Willis & Son Boat Works ("Boat Works"), which maintained a marina on its premises. Because of the location of the three-acre tract, persons travelling to and from the Boat Works were forced to use a sandy pathway that passed from the marina over the three-acre tract before reaching Main Street.
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 5
 In 1986 both the Boat Works property and the three-acre tract--respectively the quasi-dominant and quasi-servient tenements of a quasi-easement represented by the pathway[3]--belonged to Kenneth Willis, Sr. The Boat Works was managed by Kenneth Wayne Willis, also known as "Kenny," son of the elder Willis. Between April 1986 and mid-autumn 1991[4] Kenneth Willis, Sr. transferred the quasi-servient tenement to Kenny Willis. Subsequently but before the Government filed its complaint in the instant case, Kenny Willis subdivided the parcel into four lots, and conveyed two of the lots to a third party.
 
 B
 
 6
 In 1988 United States customs agents debriefed several former co-conspirators, all of whom had entered guilty pleas in connection with various narcotics offenses, concerning their marijuana-smuggling activities. The co-conspirators related the following facts: In 1985 they purchased a boat, the "Sea Dance," for the purpose of smuggling marijuana from Jamaica into the United States through the secluded coves and inlets of the North Carolina coast. In March 1986 they struck an agreement with Kenny Willis to allow 8,000 pounds of marijuana to be discharged at the Boat Works marina in Marshallberg Harbor for a fee of $25,000. Kenny Willis, who assisted in the operation by serving as a look-out, received both the $25,000 fee and a small bale of marijuana as a "bonus." After being unloaded from the "Sea Dance," the marijuana was driven from the marina across the quasi-servient tenement to Main Street.[5]
 
 
 7
 On November 1, 1991 the United States filed an in rem civil forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(7) against the two lots of the quasi-servient tenement[6] then remaining under Kenny Willis's ownership. The Government did not seek forfeiture of the other two lots because it presumed they had been transferred by Kenny Willis to an innocent, good-faith purchaser. Nor did it seek forfeiture of the tract occupied by the Boat Works, because that tract still belonged to Kenneth Willis, Sr., who knew nothing of the crimes that had taken place on his property. The Government attached to its complaint affidavits by the federal customs agents who had investigated the marijuana off-load operation.
 
 
 8
 On December 18, 1991, the district court entered an order finding that the Government had failed to establish probable cause for the forfeiture of the defendant real property. Relying upon our decision in United States v. Santoro, 866 F.2d 1538 (4th Cir.1989), the court reasoned that although a tract of land which serves as an unloading point for illegal drugs may be forfeitable under 21 U.S.C. § 881(a)(7), an adjoining tract which merely provides the sole physical path to a public highway is not so "substantially connected" to criminal activity as to be subject to government seizure under the statute. See United States v. Two Tracts of Real Property, No. 91-131-4-CIV-F, slip op. at 2-3 (E.D.N.C. Dec. 17, 1992) (order declining to issue warrant of probable cause for forfeiture).
 
 
 9
 Four months later, on March 17, 1992, Kenny Willis filed a motion to cancel the lis pendens that the Government had recorded against the property in the Superior Court of Carteret County prior to the district court's entry of its order declining to issue the probable cause warrant, and further moved to dismiss the complaint. Over the Government's opposition, the district court granted Willis's motion. The Government immediately filed notice of appeal.
 
 II
 
 10
 Because this case presents a question of statutory interpretation, our analysis properly begins with an examination of the statute itself and the caselaw it has spawned. 21 U.S.C. § 881(a)(7) reads in pertinent part:
 
 
 11
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 12
 ....
 
 
 13
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 14
 21 U.S.C. § 881(a)(7). We are called upon to determine whether the quasi-servient tenement was "used, or intended to be used ... to commit, or to facilitate the commission of" a felony violation of Title 21 of the United States Code[7] when Kenny Willis and his companions crossed it with contraband in tow.
 
 
 15
 Although the question raised by this case is substantial, in seeking its resolution we do not tread upon unfamiliar ground: at least two of our previous holdings have examined the proper scope of section 881(a)(7)'s "use or facilitation" language. Because our analysis rests in great part upon distinctions between those decisions and the instant appeal, we discuss them in some detail below.
 
 
 16
 In United States v. Santoro, 866 F.2d 1538 (4th Cir.1989), the Government sought forfeiture of twenty-six acres of undivided real property, including a dwelling, from which the sole owner had sold small amounts of cocaine to an undercover law enforcement officer. The district court granted the Government's motion for summary judgment, finding all of the property forfeitable under section 881(a)(7). The owner appealed, contending that section 881(a)(7) is unconstitutional, and that even if section 881(a)(7) is constitutional, forfeiture would be proper only for the residential portion of the property and not for the entire tract. Id. at 1541.
 
 
 17
 The owner's constitutional claim rested on two theories. First, the owner contended that section 881(a)(7), although couched as a civil forfeiture provision, is in reality a criminal forfeiture law whose terms violate the Fifth Amendment's guarantee of due process and the Eighth Amendment's promise of proportional punishment. We disagreed, holding that it was not apparent by the "clearest proof" that the effects of the statute are so punitive that it cannot be treated as civil.[8] Id. at 1543. Second, the owner urged that the "use or facilitation" language of the statute is unconstitutionally vague. In response to this argument, we acknowledged the existence of two divergent strands of authority concerning the meaning of the terms "use" and "facilitation" in section 881(a)(7), noting that each view claims adherents among our sister circuits. Id. at 1542. Yet we preserved the statutory language from unconstitutionality by adopting the narrower of the two prevailing constructions, holding that for real property to be forfeitable under section 881(a)(7), it must possess a "substantial connection" with the underlying criminal activity.[9] Id.
 
 
 18
 The owner's other assignment of error--that forfeiture was proper only for the house, and not for the entire property--rested upon the argument that the nonresidential portion of the land did not possess a sufficiently "substantial connection" to the underlying crime to warrant forfeiture. Id. Specifically, the owner urged that because the four sales of cocaine which took place on the property were small sales (a total of only 12.8 grams), forfeiture of her family's home could not be justified as "substantially connected" to the remainder of the twenty-six-acre tract. We rejected this argument, stating that
 
 
 19
 it is not for us to determine the type or size of transactions necessary to justify ... forfeiture. Congress has determined that a single felony drug violation is all that is necessary to trigger 21 U.S.C. § 881(a)(7). Congress has set no quantity limits on these predicate acts and consequently, we cannot.
 
 
 20
 Id. (footnote omitted). This conclusion reflected our basic understanding of the phrase "substantial connection" as
 
 
 21
 a common sense interpretation of the statute, ... consonant with the congressional intent that the instrumentalities of the drug trade be reached, while ensuring that property only fortuitously connected with drug trafficking be preserved.
 
 
 22
 Id. While we agreed with the owner that a "substantial connection" had to link the property to her unlawful actions, we found that her repeated use of the land as a situs for conducting drug sales fully established that connection. We therefore concluded that the property was both "used" for and had "facilitated" crime. See id. at 1542.
 
 
 23
 The facts of United States v. Schifferli, 895 F.2d 987 (4th Cir.1990), prompted our second application of the "substantial connection" standard. In Schifferli a dentist used his office more than forty times during a four-month period to write illegal prescriptions for various controlled substances. Id. at 991. The Government sought forfeiture of the office building and lot pursuant to 21 U.S.C. § 881(a)(7). Dr. Schifferli responded by arguing that Congress intended to require that the property play an "integral part" in facilitating unlawful drug activity before section 881(a)(7) forfeiture could take place. Id. at 989-90. We disagreed, stating that
 
 
 24
 [i]t is ... irrelevant whether the property's role in the crime is integral, essential or indispensable. The term "facilitate" implies that the property need only make the prohibited conduct "less difficult or more or less free from obstruction or hindrance." Just one use of the property may be enough, given that a single violation is sufficient under § 881(a)(7).
 
 
 25
 Id. at 990 (quoting United States v. 3639-2nd St., N.E., 869 F.2d 1093, 1096 (8th Cir.1989), and citing Santoro, 866 F.2d at 1542). Noting the frequency with which Dr. Schifferli had used his office to distribute and dispense controlled substances illegally, we concluded that "the direct and continuing relationship" between Dr. Schifferli's office and his crimes easily established the "substantial connection" required for section 881(a)(7) forfeiture. Id. at 990-91.
 
 III
 
 26
 Mindful of our reasoning in Santoro and Schifferli, we turn to the question presented by this case. The Government's sole assignment of error challenges the district court's conclusion that the quasi-servient tenement was not forfeitable under 21 U.S.C. § 881(a)(7). The Government rests this argument on two contentions. First, the Government urges that real property which is used to provide a means of access to a public road following the discharge of a considerable quantity of marijuana possesses a sufficient connection to criminal activity to satisfy section 881(a)(7). Second, the Government maintains that the defendant property's tendency to shield the unlawful activity at the Boat Works marina from public view compels forfeiture under the statute.
 
 
 27
 In reviewing the district court's probable cause ruling, our responsibility is to determine whether errors of law were committed. We therefore apply the law of civil forfeitures pursuant to section 881(a)(7) de novo. United States v. 7715 Betsy Bruce Lane, 906 F.2d 110, 112 (4th Cir.1990) (per curiam).
 
 
 28
 * The Government first argues that real property which provides a "means of access" to a public road following the discharge of a great quantity of marijuana possesses a sufficiently substantial connection to crime to satisfy the "use or facilitation" requirement of 21 U.S.C. § 881(a)(7). Because this contention entirely ignores the "substantial connection" standard as we define it, we disagree.
 
 
 29
 As we noted at length in Santoro, the amount of contraband present on real property is irrelevant to the government's legal capacity to bring a civil action for its forfeiture pursuant to section 881(a)(7). Whether the co-conspirators herein discharged 8,000 pounds or a single ounce of marijuana at the Boat Works marina, the Government's ability to establish the crime upon which section 881(a)(7) forfeiture is predicated is beyond question. "[I]t is not for us to determine the type or size of transactions necessary to justify the forfeiture of this property." Santoro, 866 F.2d at 1542. Therefore, we reject the Government's suggestion that the great quantity of marijuana discharged on the Boat Works property should compel forfeiture.
 
 
 30
 More importantly, the mere fact that land provides a "means of access" by which contraband reaches a public highway can hardly be said to establish the "substantial connection" Santoro and Schifferli demand. This aspect of the Government's argument is nothing more than a disguised attempt to persuade us to adopt that which we twice have rejected: the notion that simply because land is the situs of crime, it is forfeitable under section 881(a)(7). If the phrase "substantial connection" means anything, it means that for real property to be forfeitable human agency somehow must bear responsibility for the property's "use" for or "facilitation" of crime. Here the quasi-servient tenement's only connection with crime was to furnish a quasi-easement over which Kenny Willis and his companions inevitably had to haul their marijuana in order to reach the only accessible public thoroughfare. It was physically impossible to cross from the Boat Works property to Main Street by land without traversing the quasi-servient tenement. This geographic fact forced the smugglers to haul their contraband over the quasi-servient tenement. Under these circumstances, we find no substantial connection between the tract and crime.
 
 B
 
 31
 Second, the Government contends that the quasi-servient tenement's tendency to shield the unlawful activity at the marina from public view compels forfeiture under section 881(a)(7). This argument asks us to misapply a passing reference uttered in dictum in Schifferli. In that case we noted that the dentist's office provided an air of legitimacy and protection from outside scrutiny for Dr. Schifferli's illegal prescription-writing, precisely because a dentist's office is where prescriptions often are written. See Schifferli, 895 F.2d at 991. Yet the mere fact that a physical obstruction tends to conceal crime does not, without more, make the obstruction forfeitable. If such were the case, any structure or natural formation that perchance shields a lone marijuana plant from view would be subject to forfeiture under section 881(a)(7). The distinction between this case and Schifferli is obvious: in Schifferli, the dentist intended to write illegal prescriptions while on his property. The use of an office building to commit crimes that closely resemble the owner's or tenant's lawful work is a far cry from a natural object's inherent, irrepressible ability to conceal whatever lies behind it from the view of persons on the other side. In the former case, the guilty owner's intent establishes a sufficient connection with crime to render the property forfeitable. In the latter the physical obstruction is not only not substantially connected with crime; it is simply not "connected" with crime at all.
 
 IV
 
 32
 Underlying our holding is the fact that Kenny Willis possessed no legal interest in the quasi-servient tenement at the time marijuana was discharged at the marina. This circumstance sets the instant case apart from all the other disputes we and our sister circuits have decided under section 881(a)(7). In the typical forfeiture proceeding, the party who brought the property into contact with crime possesses an ownership or leasehold interest in the land. The existence of such a legal interest has assisted, albeit silently, in establishing the "substantial connection" this circuit's decisions have required, leaving us free to focus our attention elsewhere. See, e.g., Santoro, 866 F.2d at 1542-43 (discussing property owner's claim that number of cocaine sales and quantity of cocaine sold affects finding of "substantial connection").
 
 
 33
 To acknowledge the role a culpable person's legal interest in real property may play in determining the property's forfeitability is simply to reaffirm the historically quasi-punitive purpose of forfeiture laws.[10] Prior to the ratification of the Federal Constitution, the application of forfeiture penalties derived from the common law and parliamentary statutes stemmed from American colonial judges' belief that the spectre of forfeiture could wield great power as a deterrent to crime. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 681-82 & n. 19, 94 S.Ct. 2080, 2090-91 & n. 19, 40 L.Ed.2d 452 (1974) (citing Oliver W. Holmes, The Common Law 5, 34 (1881)). Blackstone, in his examination of chattel forfeitures under the common law, recognized that depriving an owner of her property seems right precisely because it was the owner's negligence that permitted the chattel to inflict injury upon another. Thus, wresting the res from the owner's grasp served to punish the owner at common law, and such punishment was recognized as one of the purposes of forfeiture. See 1 William Blackstone, Commentaries *289.
 
 
 34
 Little philosophical distance separates eighteenth-century views of forfeiture from contemporary judicial interpretations of statutes such as 21 U.S.C. § 881(a)(7). To assert that forfeiture penalties predicated upon criminal activity inherently wield punitive power when applied to the owner of property is simply to restate what two centuries have left unchanged. Moreover, such recognition does not cavil with Congress's expressed intention that section 881(a)(7) forfeitures are civil, not criminal, sanctions. See Santoro, 866 F.2d at 1543-44. While the cause of action remains civil in name and is brought by the Government directly against the property itself, it nevertheless serves to punish and to deter the criminal conduct of persons by depriving them of their rightful property. "The term penalty involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by a civil sanction or a criminal prosecution." United States v. Chouteau, 102 U.S. (12 Otto) 603, 611, 26 L.Ed. 246 (1881).
 
 
 35
 We do not mean to suggest that a culpable person must possess a legal interest in property for it to be forfeitable. Such a requirement would fly in the face of the fundamental assumption underlying all civil forfeiture statutes: property devoted to an unlawful purpose is tainted as an instrumentality of crime and therefore must be condemned. Section 881(a) civil forfeitures directed in rem are remedial civil sanctions brought directly against the property itself, and designed to protect the government from financial loss. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 548-49, 63 S.Ct. 379, 386-87, 87 L.Ed. 443 (1943). Yet the fact that the guilty party has no legal interest in the property necessarily renders the connection between the land and the underlying criminal activity less "substantial" and more tenuous. Therefore, we merely follow the lead of Santoro and Schifferli when we observe that the existence of a legal interest may be one factor to consider in applying the "substantial connection" test. This case would have been quite different, for example, if Kenneth Willis, Sr.--who held both the quasi-dominant and quasi-servient tenements at the time of the crime--had known of and endorsed his son's bargain with marijuana smugglers, or if Kenny Willis's fee-simple interest in the quasi-servient tenement had come into being before the off-load operation.
 
 V
 
 36
 One of the most potent weapons in the government's war on drugs is its ability to obtain the civil forfeiture of property that aids violations of the drug laws. Through 21 U.S.C. § 881(a)(7) Congress has given this weapon increased power, expanding the war to every piece of real property involved in the narcotics trade. Yet even warfare is conducted by rules. It is the judiciary's responsibility to ensure that the civil forfeiture penalty fells only those property interests which spring rightly and justly into its reach. While we do not doubt that the anomalous circumstances of this case render it something of a rara avis, even the rarest of species deserve shelter under the law's aegis.
 
 
 37
 Our holding does not invite the inference that we think forfeiture imposed upon Kenny Willis's interest as an in personam penalty would work injustice on these facts. Willis's guilty plea and his thoroughly reprehensible conduct settle any doubt we might have entertained on that score. Nor does our holding suggest that the forfeiture of real property in which Willis held an interest contemporaneously with his crime would be unlawful. That section 881(a)(7) forfeitures so indubitably constitute civil penalties compels us, however, to examine cases brought under the statute for what they truly are: proceedings at once civil and in rem. To permit the Government to arrest the quasi-servient tenement here simply because a guilty person acquired an interest in it after the commission of his crime would, we submit, work injustice. Confronted with such a case, we recoil.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 See infra note 3
 
 
 [2]
 The following map of the peninsula was part of the record in this case:
 
 
 [3]
 The record does not reflect what was the legal status of the pathway over the three-acre tract--the "quasi-servient tenement"--when Kenneth Willis, Sr. was sole owner of both tracts. For ease of location, however, we employ the nomenclature of easements because we believe that the North Carolina courts would term the pathway extending from the Boat Works property over the three-acre tract a quasi-easement. Under North Carolina law, an easement may be implied if, prior to the time a tract is divided, a use exists on the quasi-servient part that is reasonably necessary for the enjoyment of the quasi-dominant part and a court determines that the parties intended the use to continue after division of the property. The easement may be denominated a "quasi-easement" before the tract is divided because an owner cannot hold an easement in his own land. See Potter v. Potter, 251 N.C. 760, 762, 112 S.E.2d 569, 571 (1960); see also Bradley v. Bradley, 245 N.C. 483, 486, 96 S.E.2d 417, 420 (1957) (stating that for a quasi-easement to exist, the unity of title must have amounted to absolute ownership of both the quasi-dominant and quasi-servient tenements); Barwick v. Rouse, 245 N.C. 391, 393, 95 S.E.2d 869, 871 (1957) (same); see generally Peter G. Glenn, Implied Easements in the North Carolina Courts: An Essay on the Meaning of "Necessary," 58 N.C.L.Rev. 223, 236-50 (1980) (reviewing and analyzing opinions of the North Carolina appellate courts that describe the "necessity" required for establishment of implied easements)
 The facts establishing a quasi-easement here are not in dispute. Kenneth Willis, Sr. owned both parcels of land at the time the marijuana off-load operation took place; unity of title was therefore present. It was physically impossible to cross from the Boat Works property to Main Street by land without travelling over the quasi-servient tenement before that tract was deeded to Kenny Willis. Therefore, a servitude over the quasi-servient tract was reasonably necessary to the enjoyment of the Boat Works tract after it was granted to Kenny Willis.
 We emphasize that the North Carolina courts' perceived willingness to find a quasi-easement on these facts merely aids in the locution of the case before us. We do not believe that the existence of such an easement vel non affects our central conclusion at all.
 
 
 [4]
 The record does not reflect the exact date of the transfer
 
 
 [5]
 In February 1991 Kenny Willis was arrested for his role in the marijuana off-load operation, and entered a plea of guilty to charges of violating various federal narcotics laws. Pursuant to a plea agreement, federal authorities interviewed Willis and confirmed his role in the crime prior to bringing the instant forfeiture action
 
 
 [6]
 Of course, after its transfer to Kenny Willis, the former "quasiservient" tenement would no longer properly be called "quasi-servient," only "servient." See supra note 3. To avoid confusing the reader, however, we retain the "quasi-servient" nomenclature here and hereinafter in this opinion
 
 
 [7]
 Title 21 contains laws of a general and permanent nature relating to food and drugs. Possession of 8,000 pounds of marijuana is an offense punishable by more than one year's incarceration. 21 U.S.C. § 841(b). In light of his guilty plea with respect to various crimes defined by Title 21, including possession of marijuana with intent to distribute, id. § 841(b), Kenny Willis does not contest that the predicate act triggering 21 U.S.C. § 881(a)(7)'s application--the occurrence of a crime defined by Title 21 and punishable by more than one year's imprisonment--has been fulfilled
 
 
 [8]
 In reaching this conclusion, we applied the two-step analysis set forth in United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362-63, 104 S.Ct. 1099, 1104-05, 79 L.Ed.2d 361 (1984), for determining whether a forfeiture provision is civil or criminal. Although we noted that "the punitive aspects of forfeiture are self-evident," Santoro, 866 F.2d at 1543, we found the broad remedial purposes of 21 U.S.C. § 881(a)(7) not so punitive as to override Congress's clear intention that the provision be civil. Id. at 1544
 
 
 [9]
 In adopting the "substantial connection" test for 21 U.S.C. § 881(a) forfeitures, we followed the interpretation of 21 U.S.C. § 881(a)(4)'s "use or facilitation" language (identical to that of section 881(a)(7), but applied to conveyances that aid the commission of drug crimes) advanced by the First Circuit. See United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980). This interpretation of section 881(a)(7) was endorsed in turn by the Eighth Circuit, see United States v. 3639-2nd St., N.E., 869 F.2d 1093, 1096-97 (8th Cir.1989), and by the First Circuit, see United States v. 28 Emery St., 914 F.2d 1, 3-4 (1st Cir.1990) (citing United States v. Santoro, 866 F.2d 1538, 1542-43 (4th Cir.1989))
 At the time Santoro was decided, the Third Circuit had adopted a more liberal construction of section 881(a)'s "use or facilitation" language, holding that for purposes of section 881(a)(4), conveyances are forfeitable upon a showing that they "in any way" tended to make drug trafficking easier. See United States v. One 1977 Lincoln Mark V Coupe, 643 F.2d 154, 157 (3d Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). After Santoro the Seventh Circuit directly rejected the "substantial connection" standard, requiring the Government to prove only that the property had "more than an incidental or fortuitous connection" to the underlying crime. See United States v. 916 Douglas Ave., 903 F.2d 490, 493-94 (7th Cir.1990). The Second Circuit also permits forfeiture on a less stringent showing of "use" or "facilitation," requiring only a "nexus" between the drug activity and the property. See United States v. 38 Whalers Cove Drive, 954 F.2d 29, 33 (2d Cir.1992); United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1269 (2d Cir.1989).
 As the Eleventh Circuit has noted, however, "this conflict among the circuits may be more semantic than practical," because the meaning the courts have assigned to the terms "use" and "facilitation" often admit of--at best--opaque distinctions. See United States v. 42450 Highway 441, 920 F.2d 900, 902-03 (11th Cir.1991) (per curiam); see also Sean D. Smith, Note, The Scope of Real Property Forfeiture for Drug Related Crimes Under The Comprehensive Forfeiture Act, 137 U.Pa.L.Rev. 303, 326-27 (1988) (arguing that construction of term "facilitate" adopted by the Fourth and Seventh Circuits produces identical results).
 
 
 [10]
 The origins and history of forfeiture penalties in the United States have been surveyed fully and ably elsewhere. See United States v. 92 Buena Vista Ave., --- U.S. ----, ---- - ----, 113 S.Ct. 1126, 1127, 122 L.Ed.2d 469 (1993), aff'g 937 F.2d 98 (3d Cir.1991); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-90, 94 S.Ct. 2080, 2090-95, 40 L.Ed.2d 452 (1974); United States v. 785 St. Nicholas Ave., 983 F.2d 396, 401-02 (2d Cir.1993)