**UNITED STATES of America,**
**Plaintiff,**

v.

**ONE 1998 TRACTOR, ETC.,**
**et al.  Defendants.**

No. 1:03 CV 00033.

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 23, 2003.

___

S. Randall Ramseyer, Assistant United States Attorney, Abingdon, VA, for Plaintiff.

Michael A. Bragg, Bragg & Associates, PLC, Abingdon, VA, for Claimant Karapet Shimshiryan.

## OPINION

JONES, District Judge.

The claimant in this in rem civil forfeiture proceeding is Karapet Shimshiryan, a truck driver who transports goods in his tractor-trailer for a living. Shimshiryan's tractor and the trailer are the defendant property. Shimshiryan has previously pleaded guilty to violating the federal criminal laws that prohibit transporting, concealing, or possessing contraband cigarettes.[1] In the present action, the government seeks the forfeiture of Shimshiryan's tractor and trailer pursuant to the statute permitting the forfeiture of "an aircraft, vehicle, or vessel involved in" transporting, concealing, or possessing contraband cigarettes. 49 U.S.C.A. § 80303 (West 1997). I agree with Shimshiryan that the trailer is not subject to forfeiture because it was his tractor and not his trailer that carried the contraband and because the government has failed to establish that the trailer was substantially connected to the offense, as required under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C.A. § 983 (West Supp.2003). I reject Shimshiryan's argument that the forfeiture is barred on constitutional grounds.

### I

A bench trial has been held on the government's complaint for forfeiture, filed pursuant to Supplemental Rule C of the Federal Rules of Civil Procedure, and on Shimshiryan's claim to the property. At the conclusion of the trial, the issues were taken under advisement, and the court's findings of fact and conclusions of law are as now set out in this opinion.

The basic facts are not in dispute. On September 6, 2002, while returning to California after having delivered his trailer's cargo of produce to its destination in New York, driver-owner Shimshiryan and a companion stopped at a tobacco sales out-

---

1. *See* 18 U.S.C.A. § 2342 (West 2000) ("It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes."); 49 U.S.C.A. § 80302(b) (West 1997) ("A person may not—(1) transport contraband in an aircraft, vehicle, or vessel; (2) conceal or possess contraband on an aircraft, vehicle, or vessel; or (3) use an aircraft, vehicle or vessel to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband.").

"Contraband cigarettes" are a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of applicable State cigarette taxes in the State where such cigarettes are found, if such State requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes.

18 U.S.C.A. § 2341(2) (West 2000).

let in Virginia in this judicial district. The two men purchased and loaded approximately twenty-three half cases of cigarettes (approximately 282,400 cigarettes) into the cab of the tractor and went on their way. Shimshiryan intended to take the cigarettes back to California and from there send them to his brother in Armenia who in turn would sell them for a profit. The sales outlet had been under surveillance by law enforcement officers and Shimshiryan was followed a few miles into the neighboring state of Tennessee. Agents from the Bureau of Alcohol, Tobacco, and Firearms, along with state and local law enforcement officers, stopped the tractor-trailer in Tennessee and recovered the cigarettes from the tractor. These cigarettes did not bear Tennessee state tax stamps as required by law. Shimshiryan's criminal prosecution and this in rem forfeiture action followed.

## II

The government has two arguments as to why the trailer should be subject to forfeiture, even though the contraband cigarettes were never transported there. First, the government argues that the tractor-trailer constitutes a single "vehicle" under 49 U.S.C.A. § 80303. Second, the government claims that even if the tractor-trailer does not constitute a single vehicle for the purposes of § 80303, the trailer should still be subject to forfeiture because it provided the illegal activity with an air of legitimacy and thus shielded it from the government's suspicion.

## A

Section 80303 permits the forfeiture of "an aircraft, vehicle, or vessel involved in" transporting contraband. The government argues that the trailer should be forfeited even though it did not carry the contraband because it should not be viewed as separate from the tractor—the tractor-trailer should be considered one vehicle. Section 80303 does not define "vehicle." There are two cases applicable to this issue, *The Dolphin*, 3 F.2d 1 (1st Cir.1925), and *United States v. Santoro*, 866 F.2d 1538 (4th Cir.1989).

*The Dolphin* addressed the issue of what constitutes a "vessel" for the purposes of what was then a forfeiture statute directed at vessels delivering foreign cargo to the United States without a government permit. 3 F.2d at 1–2. In that case, a tugboat towed a barge that delivered foreign liquor to a Brooklyn pier without the requisite permit. *Id.* at 1. The applicable forfeiture statute permitted the forfeiture of "the vessel, tackle, apparel, and furniture" that illegally unloaded the cargo. *Id.* The district court had construed the term "vessel" to include the tug as well as the barge, even though the contraband had not been unloaded from the tug. *Id.* at 2. In holding that the tugboat was not subject to forfeiture, the court of appeals found that (1) there was no applicable law to support the assertion that "the tug and its tow constitute one vessel" and (2) the tugboat was not part of the "tackle" attached to the barge. *Id.*

A Fourth Circuit case that also provides guidance in interpreting § 80303 answered the question of whether a twenty-six acre lot that was separated by a road into two parts should be wholly forfeited when the criminal activity only occurred on one part of the land. In *United States v. Santoro*, five acres of the land at issue lay across the road from the other nineteen acres, and it was on the five-acre parcel that the claimant had sold drugs. 866 F.2d at 1540–41. The claimant challenged the forfeiture on the basis that the two parcels were separate, and only the smaller parcel should be forfeited because her illegal activity was confined to that area. *Id.* at 1543.

First, the court looked to the language of the statute, which permitted the forfei-

ture of "[a]ll real property, including any right, title, and interest *in the whole of any lot or tract of land* and any appurtenances or improvements." *Id.* at 1543 (alteration in original). The court of appeals then adopted the reasoning of the trial court and held that the " 'whole of any lot or tract of land' must be determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located." *Id.* at 1543. Because the property's deed described it as a single, undivided tract, the court held that the twenty-six acre lot was subject to forfeiture in its entirety, *id.* at 1541, 1543, even though it was taxed as two separate parcels, *id.* at 1540.

Shimshiryan's tractor and trailer were purchased separately, had separate titles, and separate vehicle identification numbers. Based on the First Circuit's holding in *The Dolphin* and the Fourth Circuit's reasoning in *Santoro*, I hold that the tractor and the trailer do not constitute one vehicle.

### B

■■ The government's second argument for forfeiture of the trailer is that § 80303 permits the forfeiture of a vehicle "involved in" a violation of the federal laws that prohibit transportation, concealment, or possession of contraband cigarettes. CAFRA provides that if the government's theory of forfeiture is that the property was "involved in the commission of a criminal offense," then the government must show, "by a preponderance of the evidence," that there was a "substantial connection between that property and the offense." 18 U.S.C.A. § 983(c) (West Supp. 2003). Therefore, in order for the government to gain forfeiture of the trailer on the basis that it was "involved in" Shimshiryan's violation, CAFRA requires that it establish, by a preponderance of the evidence, that there was a substantial connection between the trailer and the offense.

Although the Fourth Circuit has yet to apply CAFRA's "substantial connection" test, *see United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir.2002) (discussing CAFRA in the context of the sufficiency of pleading), its pre-CAFRA decisions in civil forfeiture cases are still instructive in applying that test because the only change in this circuit in that area of civil forfeiture law is in the government's burden of proof. Before the passage of CAFRA in 2000, "the government's trial burden was to show probable cause for forfeiture; the burden of proof then shifted to the claimant. Now, after CAFRA's enactment, the government must prove by a preponderance of the evidence that the property is subject to forfeiture." *Mondragon,* 313 F.3d at 865. Thus, the only difference between the Fourth Circuit's pre-CAFRA case law determining whether property involved with transporting contraband should be forfeited and the current test under CAFRA is in the government's heightened burden of proof—the government must now establish a substantial connection by a preponderance of the evidence, and not just probable cause.

In *United States v. Two Tracts of Real Property,* 998 F.2d 204 (4th Cir.1993), the defendant in the underlying criminal case permitted marijuana to be transported by boat to his father's marina. *Id.* at 208. After it was delivered, it was driven from the marina across another lot of land, also owned by the defendant's father, in order to access a public road. *Id.* Crossing that lot of land was the only means by which the smugglers could reach the public road. *Id.* at 212. The government sought the forfeiture of the land with access to the public road because it was allegedly substantially connected to the criminal activity on the basis that (1) it provided access to a public road following the unloading of the marijuana and (2) it tended to shield the illegal activity from public view. *Id.* at

211. As for the first claim, the court found that it was "physically impossible" for the smugglers to reach the road from the marina without crossing the land in question, but it held that this "geographic fact" did not establish a substantial connection. *Id.* at 212.

■ As for the second argument that the property's shielding effect created a substantial connection to the activity, the court held that the "mere fact that a physical obstruction tends to conceal crime does not, without more, make the obstruction forfeitable." *Id.* In further explaining its decision, the court of appeals distinguished the facts of a case it decided three years earlier, *United States v. Schifferli*, 895 F.2d 987 (4th Cir.1990), in which it upheld the forfeiture of a dental office used by the dentist to write illegal prescriptions.[2] It stated that the "use of an office building to commit crimes that closely resemble the owner's or tenant's lawful work is a far cry from a natural object's inherent, irrepressible ability to conceal whatever lies behind it" because in the former case "the guilty owner's intent establishes a sufficient connection with crime to render the property forfeitable." *Id.* at 212.

■ The decision in *Two Tracts of Real Property* establishes that when the government seeks the forfeiture of property on the basis that it was substantially connected to the crime by shielding the illegal activity from public view, it must show "more" than that the property "tends to conceal" the crime. Furthermore, proof of the owner's intent to use the property for the purpose of shielding his or her criminal activity qualifies as the something "more" required to establish a substantial connection. In this case, the government merely alleges that the trailer shielded the criminal activity from detection by creating the appearance that the claimant was engaged in a legitimate trucking business. Because the government has not provided any evidence indicating that Shimshiryan's trucking business was a sham, or that he operated it with the intent of concealing his criminal activity, it has not met its burden of proof. The government has failed to establish a substantial connection between the trailer and the offense, as required by CAFRA, and the trailer is not subject to forfeiture.

### III

■ The claimant asserts that the forfeiture of either his tractor or trailer would violate the Eighth Amendment's prohibition against excessive fines.[3] I will ad-

---

2. In *Schifferli*, the claimant was a dentist who had used his office over forty times during a four-month period to write illegal prescriptions for eight individuals. 895 F.2d at 989. *Schifferli* is like many other cases in that forfeiture of the office was upheld on the basis that it was the situs of the illegal prescription writing. It is well settled that the use of property as a situs for conducting illegal activities establishes a substantial connection between the property and the underlying criminal activity. *See, e.g., United States v. 7715 Betsy Bruce Lane*, 906 F.2d 110, 113 (4th Cir.1990) (holding property subject to forfeiture because cocaine distributed from and stored there); *United States v. Santoro*, 866 F.2d at 1541–42 (upholding forfeiture of property on which drugs were sold).

The *Schifferli* court also noted that the dental office "provided an air of legitimacy and protection from outside scrutiny, precisely because a dentist office is where prescriptions are usually written. Thus the office was actually used in the course of his crimes and made the crimes 'more or less free from obstruction or hindrance.'" *Schifferli* at 991. Although the court's comment on the property's shielding effect was dictum, *Two Tracts of Real Prop.*, at 12, it is relevant to my discussion of *United States v. Two Tracts of Real Property*.

3. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

dress the Eighth Amendment argument regarding the forfeiture of the tractor, but not regarding the trailer, as I have already held that it is not subject to forfeiture. The tractor is valued at $80,000 in the government's notice of forfeiture but the claimant himself valued the tractor and trailer together at $41,340, according to the Presentence Investigation Report prepared in connection with the defendant's criminal sentencing.

■ A forfeiture is "excessive" under the Eighth Amendment if it is "grossly disproportional to the gravity of the offense." *United States v. Bajakajian,* 524 U.S. 321, 337, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). To determine the gravity of the offense, the Supreme Court has considered four factors: (1) the nature and extent of the criminal activity; (2) its relation to other crimes; (3) its penalties; and (4) the harm it caused. *United States v. Ahmad,* 213 F.3d 805, 813 (4th Cir.2000); *see Bajakajian,* 524 U.S. at 337–38, 118 S.Ct. 2028. In *Bajakajian,* the defendant had failed to report to the United States the $357, 144 he was transporting with him from the United States abroad to pay off a legitimate debt. *Bajakajian* at 337, 118 S.Ct. 2028. The defendant challenged the forfeiture of the currency. The Supreme Court held that forfeiture of the currency was grossly disproportional to the gravity of the offense because: (1) the crime was "solely a reporting offense"; (2) the single offense was unrelated to any other illegal activities (in this case, the currency was "the proceeds of legal activity and was to be used to repay a lawful debt"); (3) the maximum sentence that could have been imposed under the Sentencing Guidelines, a $5,000 fine and six months imprisonment, confirmed a "minimum level of culpability"; and (4) the harm caused by the offense was "minimal" in that the only harm would have been that the United States

would have been "deprived of information." *Id.* at 337–39, 118 S.Ct. 2028.

Applying these factors to the present case, I find first that Shimshiryan's violation is more serious than Bajakajian's because it consisted of affirmative acts, unlike Bajakajian's single omission. Shimshiryan's criminal activity was also more extensive than Bajakajian's in that after transporting the contraband illegally within the United States, he intended to continue transporting it illegally by sending it on an airplane from California to Armenia.

Next, the maximum statutory sentence for Shimshiryan's violations is five years imprisonment and a $250,000 fine, thus indicating that Congress has found the offense to be relatively serious. *See United States v. Bollin,* 264 F.3d 391, 418 (4th Cir.2001) (finding that a statutory maximum of twenty years imprisonment and/or a $500,000 fine "indicat[ed] that Congress had found the offense to be serious."). While Shimshiryan's guideline sentence was four to ten months imprisonment, with a fine from $1,000 to $10,000, such penalties indicate a more than minimal level of culpability. *See Bajakajian* at 338, 118 S.Ct. 2028 (finding that the maximum sentence that could have been imposed on Bajakajian, six months and a fine of $5,000, "confirm[ed] a minimal level of culpability.").

As for the harm, no state lost potential revenue from the legal sale of the cigarettes, but that harm was prevented only because the authorities seized the contraband in time to prevent Shimshiryan from executing his plan. The potential harm from depriving, for example, California (where the claimant resides) or Tennessee (where the claimant was arrested) of the proceeds from the sale of approximately

punishments inflicted." U.S. Const. amend. VIII.

282,400 cigarettes is far greater than the potential loss the United States government faced in *Bajakajian* of "the information that $357,144 had left the country." *Id.* at 339, 118 S.Ct. 2028.

There is conflicting evidence as to the value of the tractor, but even assuming the higher value of $80,000 is correct, forfeiture of the tractor does not amount to an excessive fine under the Eighth Amendment. The gravity of Shimshiryan's offense is not outweighed by the value of the forfeiture considering its nature and extent, its seriousness as indicated by the statutory maximum penalty, and its potential financial harm. If forfeiture of this expensive vehicle involved in transporting contraband is excessive, then the government would be hard pressed in gaining forfeiture of any expensive vehicle, vessel, or aircraft transporting contraband. For these reasons, I find that forfeiture of the tractor does not violate the Eighth Amendment's prohibition against excessive fines.

IV

For these reasons, I will permit the tractor but not the trailer, to be forfeited. Counsel for the government is directed to prepare and submit a proposed final judgment of forfeiture consistent with this opinion.