UNITED STATES of America,
Plaintiff,

v.

$4,629.00 IN U.S. CURRENCY,
Defendant.

No. CIV.A. 7:04CV00225.

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 22, 2005.

Anthony Paul Giorno, United States Attorneys Office, Roanoke, VA, for Plaintiff.

*MEMORANDUM OPINION*

CONRAD, District Judge.

The United States filed this civil forfeiture action pursuant to 18 U.S.C. § 983 and 21 U.S.C. § 881(a)(6). The government seeks to have the defendant property condemned and forfeited to the United States for disposition according to law. This case is before the court on plaintiff's motion to dismiss and/or for summary judgment. For the reasons set forth below, the court will grant plaintiff's motion for summary judgment.

*FACTUAL AND PROCEDURAL BACKGROUND*

On May 30, 2002, law enforcement officers from Wythe County arranged for a confidential informant to conduct a series of controlled drug purchases at the home of an individual named Tracy Davis in Wytheville, Virginia. The informant was searched prior to and after each of the drug buys, and the officers provided the informant with marked currency to make the purchases.

When the informant arrived at Davis's home, he observed a Kia vehicle parked across the road from the house. When the informant questioned Davis regarding the purchase of drugs, Davis told the informant that they did not have to go anywhere to procure the drugs. The informant was told to go inside Davis's home after he or she provided money to Davis for the purchase. The informant then observed Davis walk to the Kia vehicle and bring back crack cocaine.

When the informant returned to Davis's residence around 8:30 pm to make a second buy, the Kia vehicle was no longer parked outside the house. However, in-

side the house was a black male who the informant recognized as a passenger in the Kia vehicle. The informant made the second purchase of $100 worth of crack cocaine in Davis's home and discussed the possibility of purchasing an eight ball. Davis told the informant that he would have to wait until "their people" returned.

The informant returned to Davis's residence around 9:35 pm to make a third purchase of crack cocaine. Again, the informant was searched prior to the buy and was given marked currency for the purchase. When the informant arrived at the house, he observed that the Kia had returned and had a black female driver and a black male passenger. The informant purchased another $100 worth of crack cocaine from Davis who told the informant that his suppliers had only a small quantity of crack cocaine remaining.

After the third purchase, the officers decided to stop and search the Kia. Within thirty to forty-five minutes after the third buy, uniformed officers stopped the Kia vehicle in Wytheville as it was leaving the area of Davis's home. Robert Thompson was the front seat passenger in the vehicle which was driven by Nicole Smith. During the search of the vehicle and its occupants, the officers did not discover any narcotics. However, they did discover a quantity of cash on Thompson's person. Specifically, the officers discovered $1,500.00 in cash in each of Thompson's shoes and $1,679.00 in his pocket. Included in the cash seized from Thompson was $50 of the marked currency given by the officers to the informant to make the controlled drug purchases that same evening. The total of $4,679.00 was seized for administrative forfeiture.

On September 17, 2002, Thompson was indicted for conspiracy to distribute and possess with intent to distribute more than fifty (50) grams of crack cocaine and possession with intent to distribute or aid and abet in the distribution or possession with intent to distribute crack cocaine. These charges stemmed from the activities which took place on May 30, 2002. On January 16, 2003, Thompson pled guilty to the conspiracy charge and received a sentence of ninety-six (96) months in prison, a sentence which he is currently serving.

With regard to the currency seized for administrative forfeiture at the time of Thompson's arrest, the Drug Enforcement Agency ("DEA") sent written notice of the seizure on July 10, 2002 to Rodney Thompson, not Robert Thompson, at an address in Michigan. The notice was returned to sender. On the same date, the DEA also sent notice to Rodney Thompson at the New River Regional Jail in Dublin, Virginia. This notice was also returned to sender. A notice sent on the same date to Nicole Smith, the driver of the Kia vehicle, was accepted upon delivery. In addition to the mailed notices, notice of the seizure was published in The Wall Street Journal on July 22, July 29, and August 5, 2002, pursuant to 19 U.S.C. § 1607(a).

The DEA again sent a notice of the seizure to Rodney Thompson at the New River Regional Jail on October 23, 2002. After discovering that it had addressed the notice to the wrong individual at an incorrect facility, the DEA sent a notice of the seizure to Robert Thompson at the Roanoke City Jail in Roanoke, Virginia on March 13, 2003. The return receipt for this notice was not returned. After the stated time limit had expired with no claims forthcoming, the DEA forfeited the $4,629.00 in currency to the United States on May 29, 2003.

In a letter dated October 29, 2003, Thompson sent a request to the DEA office in Roanoke for the return of his seized currency. On November 24, 2003, the DEA sent a final notice of seizure to

Thompson at the federal prison located in Glenville, West Virginia. After the DEA granted Thompson an extension of time to file his claim, Thompson did enter a claim to the $4,629.00 in currency on February 3, 2004. On February 17, 2004, the DEA rescinded the declaration of administrative forfeiture and referred the claim to the United States Attorney for the Western District of Virginia for the initiation of judicial forfeiture proceedings. The government filed its complaint for forfeiture on May 5, 2004, pursuant to 18 U.S.C. § 983(3)(A). On June 3, 2004, Thompson filed a motion to contest the forfeiture which this court has construed as Thompson's claim to the defendant currency. The government then filed this motion to dismiss and/or for summary judgment on September 3, 2004.

### DISCUSSION

#### I. *Motion to Dismiss*

■ The government contends that Thompson's motion to contest the forfeiture should be dismissed because (1) Thompson failed to include a verified statement and (2) Thompson failed to file an answer to the complaint for forfeiture. Once the government files a complaint for civil forfeiture, the Supplemental Rules for Certain Admiralty and Maritime Claims apply. 18 U.S.C. § 983(a)(3)(A). Supplemental Rule of Civil Procedure C(6)(a)(i) requires any person asserting an interest in property subject to the forfeiture action to submit a verified statement identifying the interest. In this case, Thompson did not specifically verify his motion in that he failed to include a signed statement in which he declared that his statements were true under penalty of perjury. Thompson did, however, personally sign both the motion and his accompanying memorandum of law, both of which were filed with the court. The court will accept his signed filing as a verified statement for purposes of the Supplemental Rules of Civil Procedure.

■ Supplemental Rule of Civil Procedure C(6)(a)(iii) also requires a claimant to file an answer within twenty days of filing the verified statement. The government contends that Thompson's motion and supporting memorandum constitute only the statement of his claim and not his answer. Because Thompson has failed to file a timely separate answer as required by the Supplemental Rules, the government concludes, his claim should be dismissed.

Courts have often held that the rules governing a claim to property which is subject to a forfeiture action should be strictly enforced. *See, e.g., United States v. Commodity Account No. 549 54930 at Saul Stone & Company,* 219 F.3d 595, 598 (7th Cir.2000). The purpose of the answer, however, is to set forth in detail the claims and defenses which the claimant believes support the assertion of his claim to the property. In his memorandum of law in support of his motion to contest forfeiture, Thompson, acting *pro se,* lays out his claim that the currency was earned during his employment and also asserts certain defenses including a lack of timeliness of the government's notice and the insufficiency of the government's proof. This filing, in combination with Thompson's original motion to contest the forfeiture, appears to meet the requirements of both a claim and an answer. Therefore, the court will construe Thompson's filings as comprising both a timely filed answer as well as a verified statement in support of his claim.

#### II. *Motion for Summary Judgment*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine

issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985).

█ In his memorandum of law in support of his motion to contest forfeiture, Thompson makes reference to several rules governing criminal forfeiture proceedings. This proceeding, however, is a civil forfeiture to which these rules governing criminal forfeitures do not apply.

█ Thompson also contends that the government's notice to him was not timely and that the government did not file its forfeiture action in a timely manner. In support of this argument, Thompson relies upon 18 U.S.C. § 983(a)(1)(A)(i) which requires the government to send notice to all interested parties not more than 60 days after the seizure and 18 U.S.C. § 983(a)(1)(F) which provides that the remedy for failure to provide timely notice is a return of the property without prejudice to the right of the government to bring a later forfeiture proceeding. Thompson notes that he did not receive personal notice within the required 60 day period.

The court finds Thompson's lack of timeliness argument unavailing. The DEA did send a timely notice within the 60 day period to Rodney Thompson at a Michigan address and at the New River Regional Jail. Apparently, the DEA confused Robert Thompson with another individual by the name of Rodney Thompson. After those notices were returned to sender, the DEA continued to attempt to send a personal notice, again to Rodney Thompson. The DEA also arranged for three published notices in the Wall Street Journal, a newspaper of general circulation in the Western District of Virginia, in July and August of 2002. After the DEA learned of its error, it promptly sent a notice on March 13, 2003 to Robert Thompson at the Roanoke City Jail. After receiving no response, the DEA administratively forfeited the subject currency, but when it received a letter and subsequent claim from Thompson, the agency rescinded the forfeiture and referred the case to the office of the local United States Attorney. The government filed its complaint for judicial forfeiture within the 90 day deadline established by 18 U.S.C. § 983(a)(3)(A).

Though Thompson did not actually receive personal notice within the 60 days after the date of the seizure, the government appears to have complied with the notice requirements to the extent that it was aware of the identities of interested parties at the time of the seizure. The government also arranged for a newspaper of record to publish public notices on three separate occasions. As soon as it became aware of Thompson's correct name and address, it sent him a personal notice and rescinded the administrative forfeiture to permit Thompson to assert his claim in the judicial forfeiture proceeding. Because the government reasonably complied with the notice requirements set forth in 18 U.S.C. § 983, it may properly proceed with this civil forfeiture action.

█ Under the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, in an action for the civil forfeiture of property, the government must prove by a preponderance of the evidence that the property

is subject to forfeiture. 18 U.S.C. § 983(c)(1); *United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir.2002). In this case, the government brings the action pursuant to 21 U.S.C. § 881(a)(6) which provides that the following property is subject to forfeiture:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

Because the government's theory of forfeiture in this case is that the defendant currency was used to commit or facilitate a drug trafficking offense, or was somehow involved in the commission of a drug trafficking offense, the government must also establish by a preponderance of the evidence a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3); *United States v. One 1998 Tractor,* 288 F.Supp.2d 710, 713 (W.D.Va. 2003).

In this case, the government has demonstrated a substantial connection between the defendant currency and the illegal conduct committed by Thompson. Thompson was a passenger in the Kia vehicle from which Davis obtained crack cocaine for sale on May 30, 2002. The Kia vehicle had been located at Davis's residence for several hours during the evening on that date. In fact, during the final controlled buy, Davis told the informant that his suppliers, apparently the individuals in the Kia, had only a small amount of crack cocaine remaining, presumably because they had sold the rest of their supply that night. When Thompson was searched, several of the bills found on his person were the same marked currency used by the informant to make controlled purchases of crack cocaine that evening. Furthermore, Thompson had $3,000.00 of the total seized hidden in his shoes. The evidence shows that the currency seized from Thompson's person was either furnished by persons in exchange for drugs or was used to facilitate the conspiracy to distribute crack cocaine, an offense to which Thompson pled and was adjudged guilty.

Thompson attempts to defeat the government's motion for summary judgment by maintaining that he earned the defendant currency during legitimate employment in Michigan. In support of his claim, Thompson included a letter from his criminal defense attorney in which the attorney states that Thompson's former employer indicated that his net income for the entire time he worked for the employer between August 2001 and sometime prior to May 2002 was $6,742.43. The letter goes on to state that no wage information is available from any other employers. In his request for remittance to the DEA, Thompson did include a statement signed under penalty of perjury in which he claims that the seized currency was obtained through gainful employment, though he admits that this is true only "for the most part."

■ In such a case, however, a "mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." *United States v. $10,000.00 in U.S. Currency,* 348 F.Supp.2d 612, 617 (M.D.N.C.2004) (quoting *United States v. Two Parcels of Real Property Located in Russell County, Alabama,* 92 F.3d 1123, 1129 (11th Cir. 1996)). Here, Thompson has furnished no evidence other than his own statement that the currency seized on May 30, 2002 is comprised entirely of legitimately earned

funds. It seems highly unlikely that Thompson would still retain the majority of the funds earned since the previous August without having expended those funds for the expenses of daily living, particularly when a significant portion of those funds was secreted in his shoes. Instead, the court finds by a preponderance of the evidence that the facts demonstrate that the defendant currency was furnished by persons in exchange for drugs or used or intended to be used to facilitate the conspiracy to distribute crack cocaine.

### CONCLUSION

Because the government's actions were timely and the government has proven by a preponderance of the evidence that there was a substantial connection between the defendant currency and the illegal activity engaged in by Thompson on May 30, 2002, the court will grant the government's motion for summary judgment.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to the claimant, Robert N. Thompson, 42115–060, F.C.I., Gilmer, P.O. Box 6000, Glenville, WV 26351, and counsel for the plaintiff.

### FINAL JUDGEMENT AND ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

### ORDERED

that the plaintiff's motion for summary judgment is GRANTED. The defendant currency is hereby ADJUDGED condemned and forfeited to the United States of America for disposition according to law.

The Clerk is directed to send certified copies of this Order to the claimant, Robert N. Thompson, 42115–060, F.C.I., Gilmer, P.O. Box 6000, Glenville, WV 26351, and to counsel for the plaintiff.